IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JOSHUA A. B.,[1]

Plaintiff,

v.

COMMISSIONER, Social Security Administration,

Defendant.

Case No. 3:20-cv-02140-CL

**OPINION AND ORDER**

**CLARKE,** United States Magistrate Judge:

Plaintiff Joshua A. B. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For the reasons

---

[1] In the interest of privacy, the Court uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 – Opinion and Order

provided below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in February 2017 with an alleged onset date of April 2, 2014. Tr. 350.[2] Plaintiff's application was denied initially in July 2017, and again upon reconsideration in February 2018. Tr. 175–208. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 220, and an initial hearing was held on June 20, 2019, Tr. 13. Four supplemental hearings were subsequently held on September 25, 2019; January 23, 2020; January 30, 2020; and February 18, 2020. *Id.* On April 22, 2020, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 35 years old on his alleged onset date. Tr. 350. He has a college education, Tr. 415, and past relevant work as a teacher aide, inventory clerk, and daycare worker, Tr. 31. Plaintiff alleges disability based on obsessive compulsive disorder ("OCD"), pragmatic social disorder, and irritable bowel syndrome. Tr. 414.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

See also Bustamante v. Massanari, 262 F.3d 949, 954–55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954–55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since November 2014. Tr. 16–17. At step two, the ALJ found that Plaintiff had the following severe impairments: obsessive-compulsive disorder ("OCD"), social communication disorder, and "possible general anxiety disorder." Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that

met or medically equaled the severity of a listed impairment. *Id.* The ALJ found that Plaintiff had the following RFC:

> [T]he claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant had sufficient concentration, persistence, or pace to complete simple, routine tasks that required no more than occasional supervisor oversight; the claimant should have had only occasional contact with coworkers and could occasionally have worked as part of a team; the claimant should have had only occasional contact with the general public; and the claimant would have done best with consistent and stable job tasks.

Tr. 19. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 31. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite his impairments. *Id.* The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of

the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff asserts that remand is warranted for two reasons: (1) the ALJ erred by improperly rejecting medical opinion evidence, and (2) the ALJ erred by improperly rejecting lay witness testimony. Pl.'s Br. 5–10, ECF No. 12. The Court addresses each argument in turn.

### I.   Medical Evidence

As noted, Plaintiff challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Br. 7–9, ECF No. 15.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18, 2017). In *Woods*, the Ninth Circuit considered and discussed the impact of the new regulations on existing Circuit caselaw. *See Woods v. Kijakazi*, 32 F.4th 785, 793 (9th Cir. 2022).

Under the previous regulations, in order to reject either a treating or an examining physician's opinion, ALJs were required to "provide 'clear and convincing reasons,' if the opinion [was] uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise[.]" *Id.* at 789. In *Woods*, the Ninth Circuit held that "[t]he revised social security regulations [were] clearly irreconcilable with [its] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Id.* at 792. "Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations." *Id.*

Under the revised regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two

most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In crafting their disability determination decisions, the Ninth Circuit has instructed ALJs "to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4. Thus, even under the new regulations "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.[3]

Although the Ninth Circuit in *Woods* made clear that the hierarchy among physician's opinions no longer applies in this Circuit, the Ninth Circuit did not address whether the new regulations upend the entire body of caselaw relating to medical evidence. This Court therefore concludes that the reasoning from cases unrelated to the treating physician rule remains good law. *See, e.g., Timothy P. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-02060-MK, 2022 WL

---

[3] The new regulations also remove an ALJ's obligation to make specific findings regarding relationship factors, which include: the relationship with claimant; length of treating relationship; frequency of examinations; purpose of the treatment relationship; the existence of a treatment relationship; examining relationship; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5); *Woods*, 32 F.4th at 790. However, a discussion of relationship factors may be appropriate where "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Woods*, 32 F.4th at 792 (citation omitted).

8 – Opinion and Order

2116099, at *9 (D. Or. Jun. 13, 2022). For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *See Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer [their] own conclusions. [They] must set forth [their] own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

In other words, while the new regulations eliminate the previous hierarchy of medical opinion evidence that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

    A.    **Dr. Robert Weniger**

Robert Weniger, Psy.D., conducted a psychological evaluation of Plaintiff in December 2016. Tr. 604. Dr. Weniger diagnosed Plaintiff with OCD, generalized anxiety disorder, and social (pragmatic) communication disorder with obsessive-compulsive personality features. Tr. 611. Dr. Weniger noted that Plaintiff talked excessively with rambling responses to questions, with excessive detail and lengthy tangents. Tr. 609. Dr. Weniger also noted that Plaintiff often talked over attempts at redirection and failed to appreciate social cues. Tr. 609. Dr. Weniger summarized his findings as to Plaintiff's specific vocational limitations as follows:

> [Plaintiff] reported a sporadic employment history. He has historically struggled to sustain prolonged employment. He exhibited several emotional and interpersonal challenges that will restrict his vocational options and impede his vocational progress. His vocational success will be contingent upon effective management of his mood and improved interpersonal skills. It is anticipated that he will perform most effectively at linear and procedural tasks, with limited interpersonal demands. He will certainly require a supportive employer and structured workplace environment. A gradual integration into employment is advised. It will be imperative that he initiate behavioral health treatment in order to prepare for employment. Counseling may help him cope effectively with stress, interact appropriately with others, and make effective decisions in the workplace. Those who work with him in a supportive manner are encouraged to be mindful of his limited insight into his social struggles. It will be important to model effective social skills and maintain appropriate interpersonal boundaries. He should be provided feedback regarding his social interactions and positive reinforcement for desired social behaviors. It will be important to discuss objectives and time constraints of meetings in advance. It may be helpful to agree on a nonverbal cue to alert him to excessively verbose articulations.

Tr. 612–13.

The ALJ determined that "Dr. Weniger's medical opinion is given some weight" because it "lacks an adequate function-by-function analysis for the purposes of Social Security disability evaluation." Tr. 27. The Commissioner argues that the ALJ's determination was proper because

Dr. Weniger's opinion: (1) contains broad statements without a function-by-function analysis; and (2) conflicts with the longitudinal record. Def.'s Br. 9–10, ECF No. 13.

First, while an ALJ may discount vague statements of limitations, the ALJ's rejection of Dr. Weniger's opinion here was improper. An ALJ can disregard a conclusory opinion if it does not include a specific assessment of functional capacity during the relevant period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Here, however, Dr. Weniger's opinion outlined Plaintiff's specific limitations in four areas—communication, interpersonal, psychiatric, and insight—and discussed Plaintiff's vocational potential in detail. Tr. 612–13. For instance, Dr. Weniger opined that Plaintiff will require: frequent feedback and redirection to communicate in a clear and concise manner; occasional assistance in order to prioritize tasks; advance communication regarding changes in his work responsibilities or setting; occasional assistance to adapt to changes in routine or transition between work tasks; brief breaks when Plaintiff feels distressed or overwhelmed; vocational responsibilities that allow him to work relatively independently, with limited interpersonal demands; and supportive feedback in order to identify tenable vocational goals. Tr. 612. Dr. Weniger's opinion thus described Plaintiff's limitations in sufficient detail.

Second, an independent review of the record reflects that Dr. Weniger's opinion is supported by the medical record. *See, e.g.*, Tr. 541, 546, 551, 569–70, 579–80, 588, 590, 594, 596, 598, 615, 621, 681 (noting Plaintiff's difficulty focusing and answering questions); 524, 525, 541, 543, 546, 562, 624 (noting Plaintiff's obsessive behaviors); 538, 543, 548, 556, 574, 586, 588, 592 (noting Plaintiff's severe anxiety). As explained, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects

long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison*, 759 F.3d at 1017. As such, the ALJ improperly rejected Dr. Weniger's opinion.

### B.    Dr. Luke Patrick

Luke Patrick, Ph.D., conducted a psychodiagnostic evaluation of Plaintiff in February 2018. Tr. 681. Dr. Patrick diagnosed Plaintiff with OCD, social (pragmatic) communication disorder, and medical diagnosis of irritable bowel syndrome, by self-report. Tr. 684. Dr. Patrick noted that "it did not take long to recognize the features of speech and conversation flow that are indicators of his social challenges and limitations." Tr. 683. Dr. Patrick opined that Plaintiff's "ability to participate in appropriate social interaction is appreciably impaired by the features of social communication disorder he possesses." *Id.*

The ALJ determined that "Dr. Patrick's medical opinion is given significant weight" but "lacks an adequate function-by-function analysis for the purposes of Social Security disability evaluation." Tr. 27–28. The Commissioner argues that the ALJ's determination was proper because Dr. Patrick's opinion contains broad statements without a function-by-function analysis. Def.'s Br. 10–12, ECF No. 13.[4]

While an ALJ may discount vague statements of limitations, the ALJ's rejection of Dr. Patrick's opinion here was improper. As mentioned, an ALJ can disregard a conclusory opinion if it does not include a specific assessment of functional capacity during the relevant period. *Johnson*, 60 F.3d at 1432. Here, however, Dr. Patrick's opinion described Plaintiff's specific

---

[4] The Commissioner also argues that the ALJ's determination was proper because Dr. Patrick's opinion conflicted with the medical record and Plaintiff's daily activities. *See* Def.'s Br. 9–12, ECF No. 13. However, the Commissioner's arguments directly contradict the ALJ's findings that "Dr. Patrick's medical opinion is consistent with the claimant's fairly robust activities of daily living" and "Dr. Patrick's medical opinion is also consistent with the other psychiatric examination[s] found in the medical record." Tr. 27. Additionally, a court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on grounds upon which he did not rely." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1010). As such, the Court does not entertain the Commissioner's additional arguments.

12 – Opinion and Order

limitations. For example, Dr. Patrick opined that Plaintiff's "ability to participate in appropriate social interaction is appreciably impaired by the features of social communication disorder he possesses." Tr. 683. Dr. Patrick also noted that Plaintiff had difficulty maintaining jobs because of his psychiatric symptoms, with the most prominent symptom being "challenges with social interaction." *Id.* Dr. Patrick's opinion thus described Plaintiff's limitations in sufficient detail and the ALJ improperly rejected the opinion.

### C. Dr. Daniel O'Neill

Daniel O'Neill, M.D., served as Plaintiff's primary care provider between October 2016 and January 2018. Tr. 737. Dr. O'Neill noted that Plaintiff had OCD, that Dr. O'Neill prescribed Plaintiff Prozac, and that Dr. O'Neill referred Plaintiff to behavioral health specialists. *Id.* Dr. O'Neill opined that he was "aware that [Plaintiff's] condition poses significant barriers for him being able to secure lasting and accommodating employment." *Id.* Dr. O'Neill further opined that "[Plaintiff's] health condition makes finding accommodating work challenging." *Id.*

The ALJ determined that "Dr. O'Neill's opinion is given little weight" because it was not consistent with the medical record, not consistent with Plaintiff's activities, and lacked a function-by-function analysis. Tr. 28. The Commissioner argues that the ALJ's determination was proper for those reasons. Def.'s Br. 12–15, ECF No. 13.

Here, the Court finds that Dr. O'Neill's opinion is vague and conclusory. *See Johnson*, 60 F.3d at 1432. That Dr. O'Neill's opinion is brief is not the issue. *Cf. Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (reasoning that the fact a medical opinion is "in check-box form provides no reason to reject [that] opinion, much less a germane reason"); *see also Garrison*, 759 F.3d at 1013. The issue is that Dr. O'Neill concludes that Plaintiff's condition poses "significant barriers" for Plaintiff being able to secure employment without describing any of those barriers.

13 – Opinion and Order

Tr. 737. Dr. O'Neill also states in vague terms that "Plaintiff's health condition makes finding accommodating work challenging." *Id.* As such, the ALJ did not err in rejecting Dr. O'Neill's opinion.

### D.   Dr. Alex Bloom

Alex Bloom, Psy.D., served as Plaintiff's clinical psychologist between March 2018 and August 2019. Tr. 738. Dr. Bloom diagnosed Plaintiff with OCD and major depressive disorder, recurrent, in partial remission. *Id.* Dr. Bloom noted that, during sessions, Plaintiff "can be quite rigid and verbose with his prose" which "could negatively impact first impressions on how he might come across during a job interview." *Id.* Dr. Bloom also noted that "the symptoms [Plaintiff] reports, his presentation in session, and prior evaluations lead me to wonder about his capacity to secure lasting and accommodating employment without significant barriers." *Id.*

The ALJ determined that "Dr. Bloom's opinion is given some weight" because it was not consistent with the medical record, was not consistent with Plaintiff's activities of daily living, and lacked a function-by-function analysis. Tr. 29. The Commissioner argues that the ALJ's determination was proper for those reasons. Def.'s Br. 12–15, ECF No. 13.

Here, the Court finds that Dr. Bloom's opinion was vague and conclusory. Dr. Bloom merely notes that Dr. Bloom's interactions with Plaintiff "lead [Dr. Bloom] to wonder about [Plaintiff's] capacity to secure lasting and accommodating employment[.]" Tr. 738. The opinion does not give a definitive assessment of Plaintiff's limitations. As such, the ALJ did not err in rejecting Dr. Bloom's opinion.

### II.   Lay Witness Testimony

Plaintiff assigns error to the ALJ's evaluation of the lay witness statement. Pl.'s Br. 9–10, ECF No. 12. Lay witness testimony regarding the severity of a claimant's symptoms or how an

impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

The record contains a lay witness statement submitted by Plaintiff's father, Eliot B. Tr. 449–56. The ALJ assigned "little weight" to the statement because: (1) "[b]y virtue of his relationship with the claimant, the witness cannot be considered disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges"; (2) the statement conflicted with the record. Tr. 30.

First, the ALJ erred in rejecting the lay witness statement because of the witness's relationship to Plaintiff. "Lay witness testimony as to a claimant's symptoms is competent testimony that an ALJ *must* consider." *Dodrill*, 12 F.3d at 918–19 (emphasis added); 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The mere fact that a lay witness is a family member is not alone sufficient to reject such testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Additionally, an ALJ cannot categorically exclude a lay witness testimony based on the

15 – Opinion and Order

witness's relationship to a plaintiff. *Cf. Dodrill*, 12 F.3d at 919 ("If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to each witness.").

Second, the lay witness statement was consistent with the record. Inconsistency with the medical record is a germane reason to exclude a lay witness statement from consideration. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). However, because Eliot B.'s statement is consistent with record for the reasons described *supra* in section I, the ALJ did not have a valid reason for excluding the statement. Accordingly, the ALJ's decision to assign "little weight" to the lay witness statement was harmful error.

### III.  Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are

"inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to supply legally sufficient reasons for rejecting the medical opinion evidence and the lay witness testimony.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101 (internal quotations and citations omitted). Here, the Court finds that the record would benefit from further development so that the ALJ can properly assess the medical opinion evidence and lay witness testimony. *See id.* at 1105 (noting that the evaluation of testimony and evidence are "exactly the sort of issues that should be remanded to the agency for further proceedings").

Accordingly, this case is remanded for further administrative proceedings to: (1) reevaluate the medical opinion evidence of Dr. Weniger and Dr. Patrick; (2) reevaluate the lay witness testimony of Eliot B.; (3) obtain additional VE testimony based on a reformulated RFC; and (4) conduct any further necessary proceedings. *See Burrell*, 775 F.3d at 1141.

///

///

///

## ORDER

For the reasons set forth above, the decision of the Commissioner is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED and DATED this __19__ day of January, 2023.

MARK D. CLARKE
United States Magistrate Judge